UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:17 CR 597-2 ERW (JMB) |
| | ) | |
| HAIRL T. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**[1]

Currently before the Court is Defendant Hairl T. Johnson's Motion to Suppress Evidence. (ECF No. 90)  The government has filed a response in opposition.  (ECF No. 100)  On January 16, 2019, the Court held an evidentiary hearing on Johnson's motion, and the parties submitted post-hearing memoranda.  (ECF Nos. 117, 121)  The undersigned recommends that Johnson's Motion to Suppress be denied.

**INTRODUCTION AND BACKGROUND**

This is a complex case with three co-defendants.  (ECF No. 46)  The Indictment alleges two violations.  Count I alleges a conspiracy to distribute drugs.  Count II alleges that the defendants possessed one or more firearms in furtherance of their drug-trafficking crime, and that they killed another person in the course of their conduct.  (ECF No. 1)  Count II relates to the alleged murder of Antonio Jones, whose burned body was found on November 10, 2014, in East St. Louis, Illinois.  While the charge in Count II, if proven, carries a potential death penalty, the government has formally indicated that it will not seek the death penalty.  (ECF No. 73)

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

During the Jones' murder investigation, law enforcement officers applied for and obtained two search warrants directed at a telephone number believed to be connected to the killing. Both warrants were obtained in St. Clair County, Illinois, where Jones' body was found. The first warrant was applied for on November 11, 2014, and was directed at telephone number 314-740-5338. No relevant records were received pursuant to the November 11, 2014, warrant. The second warrant was applied for on November 13, 2014, and was directed at telephone number 314-740-5338. Johnson contends that the evidence obtained pursuant to the November 13th Search Warrant must be suppressed.

On January 16, 2019, the undersigned held an evidentiary hearing on Johnson's motion. Johnson was present with his attorney, Daniel Schattnik, and the government was represented by AUSAs John Montovani and Lisa Yemm. The government presented the testimony of one witness, Detective Andrew Ward, a police officer with the City of Fairview Heights, IL, and a member of the Major Case Squad. Mr. Schattnik cross-examined Det. Ward extensively.

At the hearing, the Court received several exhibits, including a copy of the Complaint submitted for the November 13, 2014, Search Warrant and a copy of the Search Warrant as issued. (Gov't Exhs. 1A and 1B) The government also submitted a CD (Gov't Exh. 2) that included a copy of the data received as a result of the November 13, 2014, Search Warrant. Johnson introduced copies of the November 11th Complaint and associated Search Warrant (Def. Exhs. 1-3). (See Clerk's Exhibit List, ECF No. 110)

Based on the testimony and evidence adduced at the evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witness, and having fully considered the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendations.

## **FINDINGS OF FACT**

On November 10, 2014, at about 3:00 p.m., the body of Antonio Jones was recovered from the trunk of a burgundy Buick LeSabre that was burning in East St. Louis, Illinois. The Major Case Squad was activated to investigate Jones' death.

Andrew Ward is a detective with the City of Fairview Heights, Illinois, police department. As of the date of the evidentiary hearing, Det. Ward had been a police officer for more than eight years. In November 2014, Det. Ward was a member of the Major Case Squad. On the evening of November 10, 2014, he was assigned to assist in the Antonio Jones investigation. At the evidentiary hearing, Det. Ward described generally how the Major Case Squad works. He explained that detectives typically work in teams of two and are assigned various tasks. He further explained how the investigators collaborate and share information.

Detective Ward testified that his first assignment during the investigation involved interviewing Antonio Jones' family and friends. During the evening of November 10th, he interviewed Felicia Jones. From that interview, Det. Ward learned that Antonio Jones had been in the presence of a man known as "Baby Hairl" earlier on November 10th. Ms. Jones did not know this man's real name. According to Det. Ward, the Major Case Squad later determined that "Baby Hairl" was Defendant Hairl Johnson.

Other members of the Major Case Squad interviewed Pier Finn and Sandra Mitchell. Ms. Finn was Antonio Jones' girlfriend in November 2014. Ms. Finn advised that she had last seen Antonio Jones on the morning of November 10, 2014, and that they had an argument. Ms. Mitchell was Antonio Jones' ex-girlfriend, and she stated that she spoke with Antonio Jones via the telephone on November 9, 2014.

From interviewing Antonio Jones' friends and family, the Major Case Squad detectives

3

learned that Jones' cell phone number was 314-482-7120 and requested telephone records for that number, including cell-site location information. Detectives received records responsive to their request either late on November 10th or early on November 11th. From those records, detectives identified five telephone calls of interest associated with Jones' phone activity for November 10, 2014. One of the calls of interest was a call between Jones' phone and telephone number 314-740-5338, at about 9:00 a.m. on November 10th, which lasted approximately 130 seconds. The investigation revealed that Defendant Hairl Johnson was the user of telephone number 314-740-5338.

Cell-site location information relative to Antonio Jones' cell phone also indicated that the last known use of the phone was in Ferguson, MO, on November 10, 2014. The investigators later learned that the cell-site associated with that last known use was a cell tower in the area of 308 Georgia, Ferguson, MO, where Johnson lived with a girlfriend.

Another telephone number of interest was associated with a person named Anthony Stringer. Det. Ward interviewed Mr. Stringer on November 11, 2014. Stringer was Jones' friend and co-worker. Det. Ward testified that investigators identified two calls between Antonio Jones' cell phone and Mr. Stringer's cell phone during the morning of November 10, 2014. Mr. Stringer advised that the first call on November 10th was from Antonio Jones and the second call was from someone named "Butchy." The Major Case Squad investigators later determined that "Butchy" was Randall Patton (a co-defendant in this matter). According to Mr. Stringer, when he spoke with Jones on November 10th, Jones told Stringer he was following Patton on Page Avenue. When Patton called Stringer later on Jones' phone, he told Stringer that he and Jones were at "the Big B store" near Goodfellow and Maffitt.

"The Big B store" is also known as the Price Chopper store. Det. Ward and his partner

4

interviewed the owner of Price Chopper and obtained and reviewed surveillance video from that store from the morning of November 10, 2014. Det. Ward testified that the surveillance video showed Randall Patton drive onto Price Chopper's parking lot in a white Ford Expedition, and that Patton was accompanied by Hairl Johnson. Det. Ward further testified that a burgundy Buick (Antonio Jones' vehicle) pulled alongside of the white Ford Expedition with the driver's side of the Buick next to the passenger side of the Ford Expedition. Det. Ward explained that there was some interaction between the occupants of the two vehicles, after which Antonio Jones parked the Buick and went inside the store while the Ford Expedition drove off the parking lot. According to Det. Ward, the video showed that Antonio Jones quickly came back out of the store and drove off the parking lot in the same direction as the Ford Expedition.

Investigators interviewed Randall Patton relative to the events of November 10, 2014. Patton initially told investigators he did not know "Baby Hairl" and that he had been at work that day. When confronted with images from the Price Chopper surveillance, Patton admitted he had been with Johnson and Antonio Jones on November 10, 2014. Patton further advised that the white Ford Expedition belonged to Hairl Johnson and that he had been at Johnson's house at 308 Georgia, Ferguson, MO. According to Patton, after leaving the Price Chopper parking lot, Hairl Johnson, Antonio Jones, and Patton went to smoke cannabis together.

Investigators also learned that the white Ford Expedition was registered to a person named Synovia Clemons, who Det. Ward described as being in a "dating relationship" with Hairl Johnson. Investigators with the Major Case Squad learned that Ms. Clemons lived at 308 Georgia, and interviewed Ms. Clemons at that address. When they arrived, they observed a white Ford Expedition in front of the residence. Ms. Clemons reportedly confirmed that Hairl Johnson lived with her at 308 Georgia, and that Johnson and Patton used the Ford Expedition the

5

morning of November 10, 2014.  Ms. Clemons indicated that Johnson and Patton dropped her off at work that day and picked her up later.  Ms. Clemons advised that Hairl Johnson's telephone number was 314-740-5338, which is the number that is at the heart of Johnson's suppression motion.[2]

On November 13, 2014, Det. Ward presented a Complaint for Search Warrant to obtain records related to telephone number 314-740-5338.  Det. Ward testified that he and Ms. Dalan, an Assistant State Attorney, prepared the Complaint for Search Warrant and Search Warrant together before presenting the documents to Judge Gomric in St. Clair County, Illinois.  Det. Ward signed, subscribed and swore to the Complaint for Search Warrant before Judge Gomric. The Complaint for Search Warrant was signed as "APPROVED" by the Assistant State's Attorney, and signed by Judge Gomric as well.

As noted, the November 13th Complaint for Search Warrant requested records related to telephone number 314-740-5338 and listed sixteen (16) categories of information.  As relevant to Johnson's Motion to Suppress, Det. Ward requested information relative to the subscriber of telephone number 314-740-5338, the cell towers used by that telephone number,[3] and incoming and outgoing telephone records for that number.  Det. Ward also requested records regarding the content of stored communications associated with telephone number 314-740-5338, including voicemail, text messages, photographs, and browser traffic.  Det. Ward testified that the

---

[2] Det. Ward testified that the investigative team learned all of the foregoing information before he applied for a warrant for records relative to telephone number 314-740-5338 on November 13, 2014.  As noted in the Introduction and Background above, the Major Case Squad first applied for a warrant for telephone information on November 11, 2014.  At the evidentiary hearing, Det. Ward testified that the investigators did not receive any useful information in response to the November 11th warrant, and Johnson does not contend otherwise.  The focus of this Report and Recommendation is on the November 13th warrant.

[3] These records included "cell site activation" records and are referred to herein as Cell Site Location Information and "CSLI" records.

6

investigation team did not receive any of the requested records of content data from Verizon Wireless.

As part of the Complaint for Search Warrant, Det. Ward included a recitation of certain facts relevant to the investigation into the murder of Antonio Jones and how telephone number 314-740-5338 was connected to that investigation. Det. Ward explained that, on November 10, 2014, at about 3:00 p.m., a 1990 Buick LeSabre was found burning in East St. Louis. The fire was extinguished and the body of a man preliminarily identified as Antonio L. Jones was recovered from the trunk of the Buick LeSabre. The Buick LeSabre was registered to Sandra Mitchell and Antonio L. Jones. Det. Ward represented that Jones' cell phone number was 314-482-7120 and that investigators had made an exigent circumstances request to Sprint Corporation for records relative to Jones' cell phone. The records received from the exigent circumstances request included information that Jones' phone number (314-482-7120) had been in contact with phone number 314-740-5338 (the subject telephone number of the Complaint for Search Warrant) for 136 seconds, at about 9:17 a.m., on November 10, 2014.

Detective Ward stated that law enforcement had "learned that the known user of [phone number] (314) 740-5338, was seen on video surveillance at approximately 9:00 a.m. on 11/10/14, at which time the known user of this phone was speaking to [Antonio Jones] on the surveillance video." Det. Ward also represented that records requested by the Complaint for Search Warrant were "necessary to the investigation to determine the nature and the source of the telephone call made with Antonio L. Jones' [phone number]." Det. Ward further represented that subscriber information relative to 314-740-5338 was needed to determine the subscriber's identity,[4] and that the requested information "could assist this investigation and provide evidence

---

[4] During cross-examination at the evidentiary hearing, Det. Ward testified regarding the

7

of the murder." (Gov't Exh. 1a)

Judge Gomric signed a Search Warrant in which she stated:

Upon examination of the complaint, I find that it states sufficient facts to show probable cause and I therefore command that the premises of Verizon Wireless be searched and the following instrument, articles and things which have been used in the commission of, or which constitute evidence of, the offene(s) of First Degree Murder, be seized from: incoming and outgoing telephone records and ESN records of wireless telephone numbers 314-740-5338 as well as subscriber information on same, as well as the following [16 categories of records].[5]

(Gov't Exh. 1b) Judge Gomric signed the warrant on November 13, 2014, at 5:25 p.m.

The Major Case Squad received records in response to the November 13th Search Warrant, which were generally discussed at the evidentiary hearing and provided on a CD. (Gov't Exh. 2)

Additional findings of fact are included in the discussion below.

## DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATIONS

Johnson asks the Court to suppress evidence obtained pursuant to the November 13, 2014, Search Warrant issued by Judge Gomric in St. Clair County, IL. In his motion to suppress, as further clarified in his post-hearing memorandum (ECF Nos. 90, 117), Johnson focuses largely on the Cell Site Location Information (CSLI) that was obtained pursuant to the November 13th Search Warrant. Johnson notes that, in June 2018, the Supreme Court decided Carpenter v. United States, 138 S. Ct. 2208 (2018), which held that law enforcement must normally obtain a search warrant before obtaining historical CSLI data from telephone providers. Johnson acknowledges that Det. Ward obtained a search warrant, but contends that the

---

distinction between a phone user and a phone subscriber. Det. Ward explained that, although he knew Hairl Johnson was a user of 314-740-5338, he did know if that person was the only user or the subscriber for that account. Det. Ward acknowledged that the Complaint for Search Warrant did not identify the known user by name. (See Tr. at 51)

[5] The Search Warrant listed the same 16 categories of information and records requested in Det. Ward's Complaint for Search Warrant.

8

November 13th Search Warrant was defective for several reasons. Johnson contends that the scope of the warrant exceeded the scope of the probable cause supplied in support of the warrant. In other words, the warrant was not sufficiently particular because it allowed investigators to gain access to information beyond the scope of the probable cause supplied to justify the issuance of that search warrant. Johnson also argues that Det. Ward's justification for the warrant was a purported need to identify the subscriber of the 314-740-5338 telephone number. Johnson argues that Det. Ward already knew Johnson used the number and Det. Ward allegedly failed to advise Judge Gomric of that fact. Johnson suggests, therefore, that Det. Ward could not rely in good faith on the warrant that was issued.

In his motion as initially filed, Johnson also argues that Judge Gomric lacked authority to issue the warrant because the number in question had a Missouri area code, not an Illinois area code. In his post-hearing memorandum, Johnson also argues that the warrant issued was defective because it included a request to the telephone provider to provide certain assistance relative to the warrant.

In opposition, the government contends that the November 13th Search Warrant was valid, and even if the warrant was defective, Det. Ward and investigators acted in good-faith reliance on that warrant such that no evidence should be suppressed.

**I.     Validity of November 13th Search Warrant**

The parties do not raise any serious questions about whether a search warrant was required to obtain the historical CSLI data which lies at the heart of this dispute. The warrant in question was issued in 2014, several years before the Supreme Court decided Carpenter. In 2014, every Federal Circuit Court that had considered the question had concluded that obtaining CSLI information without a warrant did not violate the Fourth Amendment. See United States v.

9

Temple, 2017 WL 7798109 at *51, S1-4:15 CR 230-1 JAR (E.D. Mo. Oct. 6, 2017) (collecting cases), Report and Recommendation Adopted, 2018 WL 1116007 (E.D. Mo. Feb. 27, 2018).[6] Because the parties focus primarily on the validity of the November 13th Search Warrant, the Court will assume, without deciding, that a warrant was required for the records at issue.

"The Fourth Amendment requires that search warrants be issued only upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Dalia v. United States, 441 U.S. 238, 255 (1979) (internal quotations omitted). In Dalia, the Supreme Court further explained that valid warrants "require only three things." Id. "First, warrants must be issued by neutral, disinterested magistrates." Id. (citations omitted). Second, the warrant may issue only upon a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense." Id. (quoting Warden v. Hayden, 387 U.S. 294, 307 (1967)). Third, the warrant "must particularly describe the things to be seized as well as the place to be searched." Id. (citations and quotations omitted).

"[P]robable cause … depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." United States v. Faulkner, 826 F.3d 1139, 1144 (8th Cir. 2016) (quotations and citations omitted). Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates,

---

[6] In this case, there was another reason to seek a warrant apart from the requested CSLI data. The Complaint for Search Warrant requested disclosure of content information such as voicemail, text messages, photographs, and browser traffic. Although the case law in this area is still developing, in 2014 law enforcement would typically need a search warrant to compel disclosure of such content-based information. See 18 U.S.C. § 2703(a); United States v. Warshak, 631 F.3d 266 (6th Cir. 2010). To be clear, based on the record developed at the evidentiary hearing, the Major Case Squad did not receive any content-based information as a result of the November 13th Search Warrant. (See Tr. at 40-41)

462 U.S. 213, 232 (1983).  A reviewing court "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant."  United States v. DeFoggi, 839 F.3d 701, 706 (8th Cir. 2016) (quotation omitted), cert. denied, 138 S. Ct. 2643 (2018).  It is well-established that, when the issuing judge relies on a supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted); see also United States v. Farlee, 757 F.3d 810, 819 (8th Cir.), cert. denied, 135 S. Ct. 504 (2014); United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995).

After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference.  Gates, 462 U.S. at 236.  Thus, "[t]he affidavit should be examined under a common sense approach and not in a hypertechnical fashion."  Solomon, 432 F.3d at 827 (citation and quotations omitted); see also United States v. Ventresca, 380 U.S. 102, 109 (1965); Gladney, 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion") (citations and quotations omitted).

In addition to probable cause, the Fourth Amendment also requires that search warrants satisfy a particularity requirement.  Particularity prevents the issuance of general warrants.  See Ashcroft v. al-Kidd, 563 U.S. 731, 742-43 (2011) ("The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement."); Payton v. New York, 445 U.S. 573, 583-84 (1980).[7]  There are two-dimensions to the particularity requirement.  See Dalia,

---

[7] Related to the concept of particularity and probable cause, courts sometimes also refer to nexus; "'there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue.'"  United States v. Colbert, 828 F.3d 718, 726 (8th Cir. 2016) (quoting United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000)), cert. denied, 137 S. Ct. 1599 (2017).  "Factors to consider in determining if a nexus exists include 'the nature of

11

441 U.S. at 255. First, the warrant must particularly describe the place, person, or thing to be searched. Second, the warrant must particularly describe the evidence or items to be seized. In this case, there is no dispute that the November 13th Search Warrant satisfied the first requirement—it particularly described the place or thing to be searched, namely Verizon Wireless records in general, and records concerning telephone number 314-740-5338 in particular. As for the second requirement regarding the things or information to be seized, the Eighth Circuit has explained that "[t]he particularity requirement can be satisfied by listing the items to be seized in the warrant itself or in an affidavit that is incorporated into the warrant." United States v. Szczerba, 897 F.3d 929, 937 (8th Cir. 2018) (citation omitted), cert. pet. filed, No. 18-6905 (Nov. 29, 2018). Also, "where [an overbroad] warrant is invalid only in part, the warrant is 'severable,' and items seized pursuant to valid portions of the warrant need not be suppressed." United States v. Timley, 443 F.3d 615, 622 (8th Cir.), cert. denied, 549 U.S. 889 (2006); see also United States v. Coleman, 909 F.3d 925, 931 (8th Cir. 2018) (quoting same).

Applying the foregoing principles, the undersigned finds that the November 13th Complaint for Search Warrant established probable cause to issue a warrant authorizing the disclosure of the requested records and information, including CSLI data and subscriber information, related to telephone number 314-740-5338.

The Complaint for Search Warrant[8] Det. Ward submitted requested sixteen (16) categories of information relating to Verizon Wireless telephone number 314-740-5338. The

---

the crime and the reasonable, logical likelihood of finding useful evidence.'" United States v. Johnson, 848 F.3d 872, 878 (8th Cir. 2017) (quoting United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999)); see also Colbert, 828 F.3d at 726.

[8] For simplicity, and to be consistent with the normal practice in this District and the case law discussing probable cause, the undersigned will refer to Det. Ward's Complaint for Search Warrant as an affidavit.

12

Search Warrant included a parallel list of information to be provided by Verizon Wireless. Item number 2 requested "Cell site activations," and item number 8 requested a map "showing all cell-site tower locations/addresses, sectors, and orientations." (Gov't Exhs. 1a, 1b) Item 6 requested subscriber information for telephone number 314-740-5338.

Though fairly brief, Det. Ward's affidavit provided the basic facts, as then known, to the Major Case Squad's investigation of Antonio Jones' murder. For example, the affidavit noted that Jones' body was recovered from the trunk of a Buick LeSabre, which had been found burning in East St. Louis, Illinois, at about 3:00 p.m. on November 10, 2014. The affidavit stated that Jones' known cell phone number was 314-482-7120. The affidavit explained that records from Sprint associated with Jones' cell phone number showed that Jones' phone was in communication with cell phone number 314-740-5338 (which was the target of the search warrant) on November 10, 2014. The affidavit further explained that the call in question lasted 136 seconds and occurred at about 9:17 a.m. Det. Ward represented that the requested records "are necessary to the investigation to determine the nature and the source of the telephone call" made with Jones' phone, and that "[r]ecords on subscriber information are necessary to determine that subscriber's identity." (Id. emphasis supplied) Thereafter, Det. Ward also represented that "[l]aw enforcement has learned that the known user of the phone with [phone number] (314) 740-5338 was seen on video surveillance at approximately 9:00 a.m. on 11/10/14, at which time the known user of this phone was speaking with the deceased on the surveillance footage." (Id.) Det. Ward concluded his affidavit by representing that there was "probable cause to believe that the requested information as to the phone number of wireless telephone number 314-740-5338 with Verizon Wireless, could assist this investigation and provide evidence of the murder." (Id.) The affidavit was signed by Det. Ward, approved and signed by an Assistant

13

State's Attorney, and signed by Judge Gomric.  The corresponding Search Warrant was signed by Judge Gomric on November 13, 2014, at 5:25 p.m.

The undersigned finds that the November 13th Search Warrant satisfies all of the requirements for a search warrant.  See Dalia, 441 U.S. at 255.  It was signed by a neutral and detached judge, it recited facts to justify finding of a fair probability that evidence related to a particular crime—the murder of Antonio Jones—would be associated with telephone number 314-740-5338, and it particularly described the information requested in sixteen enumerated paragraphs.

Regarding the neutral and detached magistrate requirement, Johnson contends, without citation to any authority, that Judge Gomric lacked authority to issue the warrant because it was directed to a telephone number having a Missouri area code—314.  Putting aside the practical fact that area codes for cell phones are mobile (unlike a "land line," a cell phone's area code does not limit use to a particular venue or state), federal law authorizes state judges to issue search warrants directed to wireless providers such as Verizon Wireless.  In particular, 18 U.S.C. § 2703 addresses the processes available for compelling the production of records from service providers such as Verizon Wireless.  Although it is a federal statute, § 2703 specifically contemplates the issuance of search warrants by State courts pursuant to State warrant procedures, if issued by a court of competent jurisdiction.  See 18 U.S.C. §§ 2703(a), (c)(1)(A).  Section 2711 provides a statutory definition of a "court of competent jurisdiction" to include "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants."  18 U.S.C. § 2711(3)(B).  Johnson's attack on Judge Gomric's authority does not call into question the general jurisdiction authority of her court.  Rather, he simply calls into question the authority to investigate a phone number having a "314" area code.  This specific contention

14

must be rejected because, at the time Judge Gomric issued the warrant, there was a murder investigation involving a person whose body was found in Judge Gomric's jurisdiction—St. Clair County, IL.[9]  Johnson does not contend that Judge Gomric or her court lacked general authority to issue warrants concerning criminal investigations in her county.

The next question is whether Det. Ward's affidavit provided sufficient probable cause to support issuance of a warrant compelling Verizon to disclose the CSLI records and other information requested.  The undersigned concludes that, on a fair and common sense reading, the affidavit established probable cause.

The affidavit established that Antonio Jones was murdered on November 10, 2014, and that his body was found in a burning car in East St. Louis during the afternoon of November 10th.  Det. Ward explained that Jones' phone had been in contact with the phone number in question—314-740-5338—at about 9:17 a.m. on the morning of the murder.  Further, Det. Ward noted that investigators had obtained surveillance video from November 10, 2014.  The surveillance video showed the "known user" of 314-740-5338 speaking with Antonio Jones at about 9:00 a.m.  Although Det. Ward's affidavit did not state that the "known user" was Hairl Johnson, the affidavit clearly connected telephone number 314-740-5338 and the "known user" to the victim (Antonio Jones) on the date of the murder.  Thus, Judge Gomric could conclude that there was a reasonable and fair probability that evidence of Jones' murder would be found in records associated with Verizon Wireless phone number 314-740-5338.  See Faulkner, 826 F.3d at 1144.

---

[9] Section 2703 makes no distinction based on the area code at issue.  In fact, had the investigators opted to seek a warrant from the United States District Court for the Southern District of Illinois (which encompasses East St. Louis, where the victim's body was recovered), that Court would have been authorized to issue a search warrant.  Section 2711(3)(A) also defines a "court of competent jurisdiction" to include "any district court of the United States … that – (i) has jurisdiction over the offense being investigated…."

Furthermore, it makes considerable common sense to conclude that there was a fair probability that location evidence relative to 314-740-5338, namely CSLI records, would be relevant and aid in the determination of whether the user of 314-740-5338 was involved in the murder of Antonio Jones. CSLI records could disclose, for example, whether the user of 314-740-5338 was in or around the area where Jones' body was discovered or the location where Jones was murdered, if other than in East St. Louis where his body was recovered. Other records requested (e.g., incoming and outgoing telephone records of 314-740-5338) would reveal other potential suspects and/or participants in the murder investigation.

Johnson also argues that the warrant was flawed because Det. Ward represented that, "Records on subscriber information are necessary to determine the subscriber's identity," yet the investigators already knew that Hairl Johnson was the purported user of cell phone number 314-740-5338. Johnson does not argue that Det. Ward provided false information such that a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) is necessary.[10] Rather, he suggests that a warrant should not issue for information or evidence that detectives already know.

Johnson's argument regarding Det. Ward's prior knowledge does not justify suppression of any evidence for at least two reasons. First, a cell phone's user and subscriber need not be the same person. There is nothing in the record to indicate that the investigators actually knew the identity of the subscriber (as opposed to the user) on the account for telephone number 314-740-5338. Second, even if investigators had been told who the subscriber was, that would not

---

[10] On the existing record, Johnson would not be entitled to a Franks hearing because the affidavit is not false or misleading—Det. Ward's affidavit clearly implies he had identified a known user for telephone number 314-740-5338. See United States v. Shockley, 816 F.3d 1058, 1061 (8th Cir. 2016) (identifying showing a defendant must make to be entitled to a Franks hearing). Perhaps it would have been clearer to identify the known user as Hairl Johnson, but warrants are not examined under such fixed or hypertechnical standards. See Solomon, 432 F.3d at 827.

16

preclude them from seeking a warrant from the cellular provider to confirm (or refute) that information. Johnson has identified no cases that preclude an investigator from securing a search warrant to obtain information the investigator already knows through other means.

Johnson briefly takes issue with the fact that the November 13th Search Warrant directed Verizon to supply information such as maps showing the locations of cell-site towers and other technical assistance. Johnson cites no authority for his contention, and the undersigned is not aware of any case law that might support his argument. Moreover, from a constitutional perspective, it would be hard to image how Johnson might have any reasonable expectation of privacy in Verizon's own map records showing where its cell-site towers were located or in any technical assistance Verizon might be able to provide to the investigators. See United States v. Wright, 844 F.3d 759, 762 (8th Cir. 2016) (citing Rakas v. Illinois, 439 U.S. 128 (1978)).

The undersigned finds, therefore, that the November 13th Search Warrant complied with all of the requirements for a valid warrant. Johnson's Motion to Suppress evidence obtained pursuant to that warrant should be denied.

## II.   **Good-Faith**

Having concluded that the November 13th Search Warrant satisfied all of the Fourth Amendment's requirements, there is no need to consider the government's fallback argument that, even if the warrant was defective, the investigators acted in good-faith reliance on that warrant. For purposes of a more complete record, the undersigned will address the matter.

"[The] exclusionary rule does not apply 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015) (quoting United States v. Leon, 468 U.S. 897, 921 (1984)). In considering good-faith, "[t]he Court must look at the objectively

17

ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." Id. (citations omitted). "In assessing the objective reasonableness of a police officer's execution of a warrant, [reviewing courts] must look to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge." Id.; see also Farlee, 757 F.3d at 819.

"The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." United States v. Ortiz-Cervantes, 868 F.3d 695, 703 (8th Cir. 2017) (citation and internal quotations omitted), cert. denied, 138 S. Ct. 1439 (2018). Therefore, the good-faith exception to the exclusionary rule does not apply in the following situations:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
> (2) when the issuing judge "wholly abandoned [the] judicial role" in issuing the warrant;
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

Jackson, 784 F.3d at 1231 (quoting Leon, 468 U.S. at 923).

Applying these principles to the present facts, the undersigned finds that Det. Ward and the Major Case Squad could reasonably rely on the November 13th Search Warrant.

Johnson's primary argument is that Det. Ward and the investigators are not entitled to rely in good-faith on the November 13th Search Warrant because Det. Ward knew Johnson was the user of telephone number 314-740-5338, but he did not include that fact in the affidavit. In other words, Johnson contends that Det. Ward's affidavit included false or misleading information, which would preclude a finding of good-faith. The facts developed at the

18

evidentiary hearing do not support this argument.[11]

Not naming a suspect does not make an affidavit false or misleading in this case.  Det. Ward certainly could have used clearer language—his affidavit refers to a "known user" instead of "Hairl Johnson."  Nonetheless, the affidavit clearly states, and the reviewing judge had reason to find, that Det. Ward knew who was using the subject telephone number on November 10, 2014.  And as Det. Ward testified, knowing a user of the phone is not the same as knowing all users of the phone or the subscriber for the account associated with the phone.  Thus, the undersigned finds that there was nothing false or misleading in the affidavit.

The remaining exceptions to the good-faith exception are not seriously contested by Johnson.  There is no contention that the issuing judge abandoned her judicial role.  As explained above, the undersigned believes that the affidavit included sufficient probable cause for a judge to issue a warrant for the information requested.  But even if the affidavit fell short of the mark somehow, it was not so lacking in probable cause as to render any belief in the warrant unreasonable.  Furthermore, the facts developed at the evidentiary hearing demonstrate that, by the time he applied for the warrant, Det. Ward knew additional information that would have added to probable cause if that information had been included.  See Jackson, 784 F.3d at 1231 (explaining that, in assessing good-faith, a reviewing court should look at information known to the investigators but not presented to the issuing judge).  On this record, there is no reason to conclude that Det. Ward withheld or obscured information that would have detracted from a probable cause finding.  Finally, the warrant itself was not facially defective in any manner.

---

[11] The Court does not read Johnson's pleadings as seriously challenging the credibility of Det. Ward's hearing testimony.  To the extent it may be relevant to later review, the undersigned observed Det. Ward at the evidentiary hearing and has reviewed the entirety of his testimony in the context of the issues raised by Johnson's Motion to Suppress.  The undersigned finds Det. Ward's testimony to be credible.

19

In sum, even if the November 13th Search Warrant is somehow found to be defective, no evidence should be excluded because Det. Ward and the investigative team acted in good-faith reliance in obtaining and executing the warrant.

## CONCLUSION

Accordingly,

**IT IS HEREBY RECOMMENDED** that Johnson's Motion to Suppress [ECF No. 90] be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Pretrial proceedings have not concluded in this matter.[12]  The trial of this matter will be set by the Honorable E. Richard Webber, Senior United States District Judge, at the conclusion of all pretrial proceedings.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  11th  day of  March , 2019.

---

[12] Co-Defendant Marquis Reasonover also filed motions and the Court is currently awaiting the government's response to Reasonover's Motion to Suppress Evidence.  (See ECF No. 136)